UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LICETTE GONZALEZ,

    Plaintiff,

v.                                        Case No:   6:15-cv-212-Orl-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court on Plaintiff Licette Gonzalez's Complaint (Doc. 1) filed on February 11, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.**    **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

**B.**     **Procedural History**

On July 12, 2012, Plaintiff filed an application for disability insurance benefits ("DIB"). (Tr. at 136).  On August 30, 2012, Plaintiff filed an application for supplemental security income ("SSI").  (Tr. at 136).  Plaintiff asserted an onset date of December 1, 2011.[1]  (Tr. at 236-250). Plaintiff's application for DIB was denied initially on April 1, 2013, and Plaintiff's application for SSI was denied initially on December 17, 2012.  (Tr. at 135, 136).  On May 29, 2013, Plaintiff's applications for DIB and SSI were denied on reconsideration.  (Tr. at 153, 172).  A hearing was held before Administrative Law Judge ("ALJ") John D. McNamee-Alemany on May 1, 2014.  (Tr. at 55-74).  The ALJ issued an unfavorable decision on June 5, 2014.  (Tr. at 35-48).  The ALJ found Plaintiff not to be under a disability from December 1, 2011 through the date of the decision.  (Tr. at 48).

On September 4, 2014, the Appeals Council denied Plaintiff's request for review.  (Tr. at 22-28).  On November 14, 2014, Plaintiff requested additional time to file a civil action.  (Tr. at 4).  On January 9, 2015, the Appeals Council allowed Plaintiff an extension of thirty (30) days from the date she received the letter from the Appeals Council to file a civil action.  (Tr. at 1-2). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on February 11, 2015.

---

[1] In the Application for DIB, Plaintiff alleged an onset date of December 1, 2011, but in the Application for SSI, Plaintiff alleged an onset date of July 6, 2008.  (Tr. at 261-68).  In Plaintiff's Brief, Plaintiff concedes that her onset date is December 1, 2011.  (Doc. 29 at 4).

2

This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 19).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2013. (Tr. at 37). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2011, the alleged onset date. (Tr. at 37). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: ischemic heart disease, pancreatitis, anemia, asthma, lumbar sprain/strain, affective mood disorder, psychosis, and alcohol dependence. (Tr. at 37). At step three, the ALJ determined that

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. at 38). At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work except:

> she can perform work that is simple and repetitive, with no fast pace or high quotas; must avoid concentrated exposure to fumes, dusts, gases, odors, or poor ventilation; contact with the general public and coworkers is occasional and superficial; can stand and or walk for 30 minutes at a time and a maximum of 6 hours in an 8-hour day; can sit for 8 hours in an 8-hour day, but in addition to normal breaks, must be allowed stand for about 1 minutes [sic] every 30 minutes without leaving the work station; can occasionally kneel, stoop, crouch, balance; and cannot work in unprotected heights or in close proximity to dangerous moving machinery.

(Tr. at 40). The ALJ determined that Plaintiff was unable to perform her past relevant work. (Tr. at 46). After considering Plaintiff's age, education, work experience, residual functional capacity and vocational expert testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 47). The ALJ found Plaintiff able to perform the requirements of the following jobs: (1) Marker, DOT # 209.587-034,light work, SVP 2; (2) Production Inspector, DOT # 727.687-054, light work, SVP 2; and (3) Wrapper/Packer, DOT # 920.686-038, light work, SVP 2.[3] (Tr. at 47). The ALJ concluded that Plaintiff was not under a disability from December 1, 2011 through the date of the decision. (Tr. at 48).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether

---

[3] "DOT" refers to the *Dictionary of Occupational Titles*.

the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II.     Analysis**

On appeal, Plaintiff raises two issues. As stated by Plaintiff, they are:

(1) Whether the ALJ erred in determining that Plaintiff has the residual functional capacity to perform light work with some non-exertional limitations after failing to state the weight the ALJ assigned to the opinions of Plaintiff's treating physician.

(2) Whether the ALJ properly relied on the testimony of the vocational expert after posing a hypothetical question that did not adequately reflect the limitations of Plaintiff.

(Doc. 29 at 2-3). The Court will address each issue in turn.

### A. Weight of Treating Physicians

Plaintiff asserts that the ALJ erred in failing to state the weight he afforded to Plaintiff's treating mental health physicians. By failing to state the weight of each mental health provider's opinion, Plaintiff claims that it is not clear how the ALJ reached his determination of Plaintiff's RFC. The Commissioner responds that Plaintiff contends in a "cursory manner" that the ALJ erred in failing to set forth the weight of unidentified treating physicians from two facilities, Lakeside Behavioral Healthcare ("Lakeside") and Seminole Behavioral Healthcare ("Seminole"). By Plaintiff not specifically citing to the record or naming the treating physicians, the Commissioner argues that Plaintiff failed to address how the content of these unnamed treating physicians' reports conflicted with Plaintiff's RFC finding. Further, the Commissioner asserts that upon review of the records from Lakeside and Seminole, those records do not support additional mental limitations beyond those found by the ALJ.

The Court finds merit in the Commissioner's argument that Plaintiff failed to specify the names of the treating physicians at issue. The Scheduling Order (Doc. 18) entered on June 26, 2015 provides:

> Plaintiff must identify with particularity the discrete grounds upon which the administrative decision is being challenged. Moreover, any such discrete challenges must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards. Any contention for which these requirements are not met is subject to being disregarded for insufficient development.

(Doc. 18 at 1). Plaintiff failed to provide the names of the treating physicians, the conflict between the ALJ's RFC finding and the reports from these unnamed treating physicians, any citation to these unidentified treating physicians in the record, and any pertinent facts relating to these unidentified treating physicians. Although the Scheduling Order cautioned Plaintiff that by failing to meet these requirements, the issues may be subject to being disregarded, the Court will

6

endeavor to review the sufficiency of the ALJ's decision in considering the opinions of treating physicians from both Lakeside and Seminole facilities.

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

An ALJ is required to state with particularity the weight he gives to the medical opinions of record and the reasons why. *Shaw v. Astrue*, 392 F. App'x 684, 686 (11th Cir. 2010) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)); *see also McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006). Whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel*, 631 F.3d 1176, 1178 (11th Cir. 2011). Without such a statement, the reviewing court is unable to determine whether the decision of the Commissioner was supported by substantial evidence. *Shaw*, 392 F. App'x at 686. "Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless 'good cause' is shown." *Poellnitz v. Astrue*,

7

349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. §404.1527(d)(1), (2), (5); and *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

Beginning with the Lakeside records, the ALJ noted that Plaintiff was committed pursuant to Florida's Baker Act in February 2012. (Tr. at 44).[4] The ALJ took note of Plaintiff's Global Assessment of Functioning ("GAF") score of 30, but also noted that Plaintiff's symptoms were "primarily related to substance abuse." (Tr. at 44). The ALJ referenced a recent suicide attempt, but noted that Plaintiff's reporting of the facts of the event were not consistent, and Plaintiff was found to be an unreliable historian. (Tr. at 44). During this hospitalization, the ALJ noted that Plaintiff admitted to drinking on a daily basis and upon discharge was instructed to seek substance abuse treatment. (Tr. at 44). The records from Lakeside indicate that Plaintiff was voluntarily admitted and was diagnosed with depressive disorder, posttraumatic stress disorder, alcohol abuse, and asthma by Lauren Kaplan, M.S.W. (Tr. at 403, 405). Plaintiff was discharged within twenty-four (24) hours after arrival at Lakeside because she did not meet the criteria for inpatient treatment. (Tr. at 398).

At Seminole, the ALJ noted that Plaintiff was Baker Acted again in April 2012, but presented with minimal symptoms. (Tr. at 44).[5] The ALJ carefully reviewed the records from this incident. (Tr. at 44). The ALJ noted that Plaintiff was assessed for alcohol detoxification and released after three (3) days. (Tr. at 44). The ALJ reviewed the assessment of Valerie Westhead, M.D. that showed Plaintiff had a relatively normal mental status. (Tr. at 44). The ALJ noted that Dr. Westhead's report found Plaintiff pleasant, cooperative, her stated age, and

---

[4] Although Lakeside is not specifically mentioned, the ALJ cites to "B1F" and that citation corresponds to the records from Lakeside. (Tr. at 44).

[5] Although Seminole is not always specifically mentioned, the ALJ cites to "B5F", "B7F", and "B11F" and these citations correspond to the records from Seminole. (Tr. at 44-46).

8

had an only mildly anxious mood and congruent affect. (Tr. at 44). Dr. Westhead found Plaintiff's thoughts to be linear and goal-oriented showing no evidence of any internal preoccupation or other thought disorder. (Tr. at 44). The ALJ noted that Dr. Westhead found Plaintiff denied suicidal ideations, was alert, oriented, had adequate concentration, and intact memory. (Tr. at 44). Further, Dr. Westhead found Plaintiff's cognitive abilities to be average and her insight and judgment to be fair. (Tr. at 44).

The ALJ noted a break in treatment until August 2012, when a psychiatric evaluation was completed at Seminole. (Tr. at 44). The psychiatric evaluation contained a diagnosis of mood disorder, psychotic disorder, and alcohol dependence. (Tr. at 44). The ALJ noted that Plaintiff acknowledged that she continued to drink up to eight 16-ounce beers daily, and admitted to having withdrawal symptoms such as shakes, vomiting, nausea, and insomnia. (Tr. at 44). The ALJ found notable that Plaintiff declined admittance into detoxification, even though sobriety was strongly advised. (Tr. at 44). The ALJ noted that Plaintiff's mental status findings remained essentially normal, her thoughts were coherent, logical, and organized. (Tr. at 44). Even though Plaintiff reported auditory and visual hallucinations as well as mild paranoia, these symptoms were not exhibited during the evaluation. (Tr. at 44). In December 2012, Plaintiff visited Seminole, and the ALJ noted that Plaintiff denied any psychotic symptoms and reported that her anxiety and depression improved with medication. (Tr. at 44).

The ALJ found that Plaintiff's mental limitations "appear to be overstated and embellished. Moreover, the majority of the claimant's mental symptoms appear secondary to her alcohol abuse, which in turn prompted the majority of the claimant's treatment." (Tr. at 45). The ALJ found very little evidence of any sustained mental health treatment during the period of time at issue. (Tr. at 45). Moreover, the ALJ noted that when Plaintiff did seek treatment, her

symptoms improved, and opined that with adequate treatment and abstinence from alcohol, Plaintiff would likely have few mental limitations. (Tr. at 45).

The ALJ also reviewed the state agency psychological consultants' reports finding Plaintiff to have mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (Tr. at 45). The state agency consultants found Plaintiff may have mild memory limitations due to her mental health symptoms and continued alcohol use, with difficulties carrying out detailed instruction. (Tr. at 45). The ALJ noted the state consultants found Plaintiff would have difficulties maintaining attention and concentration for extended periods of time, and difficulties getting along with the public and co-workers. (Tr. at 45). The ALJ noted that state agency consultants are impartial, licensed, psychologists who are familiar with the Social Security disability requirements. (Tr. at 45). The ALJ stated, "[a]s [the state agency consultants'] opinions are contradicted by any treating source statement, the undersigned has afforded them great weight." (Tr. at 45).

Finally, the ALJ discussed Plaintiff's various GAF scores throughout the medical records. (Tr. at 45). The GAF scores ranged from 30 to 48. (Tr. at 45). The ALJ noted that these GAF scores reflect serious symptoms, but noted that a GAF score is only one tool in assessing a plaintiff's mental condition, and must be considered in light of all of the medical records in evidence. (Tr. at 45). Further, the ALJ noted that GAF scores are only a snapshot of an individual's functioning at that moment and other factors also contribute to that snapshot. (Tr. at 45). The ALJ afforded Plaintiff's GAF scores little weight. (Tr. at 45).[6]

---

[6] Courts in this district have also recognized that GAF scores are of "questionable value in determining an individual's mental functional capacity." *See Wilson v. Astrue*, 653 F. Supp. 2d

There is no question that the ALJ carefully considered both the records from Lakeside and Seminole facilities in determining Plaintiff's RFC. Even though the ALJ did not specifically use the term "weight" when discussing the opinions of the mental health professionals at Lakeside and Seminole, the ALJ clearly summarized and considered these medical records from these facilities in his decision. Moreover, an ALJ is not required to use specific language or terms in a decision. *See Razor v. Comm'r of Soc. Sec.*, No. 6:12-CV-958-ORL-DAB, 2013 WL 5854575, at *4 (M.D. Fla. Oct. 30, 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 589 (11th Cir. 1987) ( holding"[w]e do not require that ALJs necessarily cite to particular regulations or cases; nor do we require the use of particular phrases or formulations")).

The ALJ noted that these mental health records generally found Plaintiff's mental health to be essentially normal. The ALJ credited these reports generally in his findings, especially the findings that Plaintiff's mental health was essentially normal. Further, the ALJ specifically discounted some areas of these reports when finding that many of Plaintiff's mental health symptoms appear secondary to her substance abuse, and the ALJ noted that it was the substance abuse that prompted the majority of her treatment. Thus, the Court is not left pondering why the ALJ made the decision he made. *See Colon v. Comm'r of Soc. Sec.*, 2016 WL 4727993, at *2 (11th Cir. Sept. 12, 2016).

Moreover, the ALJ specifically afforded great weight to the state agency consultants' opinion and set forth the reasons why he afforded them great weight. The ALJ noted that the state agency consultants are licensed psychologists who review the medical evidence of record and are familiar with the disability requirements of the Social Security Administration. (Tr. at

---

1282, 1293 (M.D. Fla. 2009) (quoting *Gasaway v. Astrue*, Case No. 8:06-CV-1869-T-TGW, 2008 WL 585113, at * 4 (M.D. Fla. Mar. 3, 2008)).

45). By restricting Plaintiff to simple and repetitive tasks that are not fast-paced or require high quotas, the ALJ adapted Plaintiff's RFC to include the limitations found by the state agency consultants.

Further, the ALJ specifically determined that even if the state agency consultants' opinions conflicted with the treating physicians' opinions, the ALJ afforded the state agency consultants' opinions great weight. The ALJ supported this rationale by citing to substantial evidence in the record. Moreover, Plaintiff failed to show that the records from Lakeside and Seminole support a different RFC determination. Thus, even if the ALJ failed to state with particularity the weight assigned to the mental health professionals' opinions at Lakeside and Seminole, the error was harmless because it did not affect the ALJ's ultimate determination to afford great weight to the state agency consultants' opinions and include their findings in determining Plaintiff's RFC. *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (holding that the extent that an administrative law judge commits an error by failing to state with particularity the weight assigned to treating physicians, the error is harmless if it did not affect the judge's ultimate determination). The Court finds that substantial evidence supports the ALJ's RFC determination.

Accordingly, the Court finds that while the ALJ did not specifically use the term "weight" in assessing the opinions of medical professional at Lakeside and Seminole, he clearly considered the opinions of the mental health professionals at both of these facilities and supported his findings by citation to the record. Plaintiff failed to identify with particularity the treating physicians' records at issue and failed to indicate how these records would have affected Plaintiff's RFC determination. The Court finds even if the ALJ erred in failing to specifically use the term "weight" in assessing the opinions of mental health providers at Lakeside and

Seminole, the error was harmless because the ALJ considered these opinions in the decision and properly determined Plaintiff's RFC. Accordingly, the Court finds that the decision of the ALJ as to Plaintiff's RFC is supported by substantial evidence in the records.

### B. Vocational Expert and Hypothetical

Plaintiff argues that the ALJ erred in posing an improper hypothetical to the vocational expert and, thereafter, improperly relied on the testimony of the vocational expert as to the jobs Plaintiff was able to perform. This second issue is tied to Plaintiff's first issue. Plaintiff argues that by failing to properly weigh the opinions of the treating mental health professions, the ALJ did not properly assess Plaintiff's RFC. Thus, Plaintiff argues that the hypothetical using this RFC was improper and the resulting testimony of the vocational expert was also improper.

"The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there a jobs that exist in the national economy that a claimant can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). Further, an ALJ is not required to include limitations in a hypothetical question to a vocational expert that the ALJ did not find credible. *Pierson v. Comm'r of Soc. Sec.*, 494 F. App'x 930, 935 (11th Cir. 2012) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d at 1180).

13

In this case, the Court determined *supra* that the ALJ properly weighed the opinions of the treating mental health professionals at Lakeside and Seminole. The ALJ included the limitations he found credible when presenting the hypothetical to the vocational expert. The hypothetical included that the job must be simple, repetitive, not fast-paced, and not quota-driven. (Tr. at 71). These limitations were included in Plaintiff's RFC and are accurately reflected in the hypothetical to the vocational expert. Therefore, the Court finds that the ALJ did not err in the hypothetical presented to the vocational expert, and did not err in relying on the vocational expert's testimony concerning the jobs Plaintiff is able to perform. Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decisions of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 16, 2016.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties

14